UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARCIE LEE SCHREPEL,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Commissioner of Social Security,<br><br>Defendant. | No. 2:20-cv-01996 AC<br><br><br><br>**ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, plaintiff's motion for summary judgment is GRANTED, and defendant's cross-motion for summary judgment is DENIED.

I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on July 24, 2018. Administrative Record ("AR") 202-05 (ECF No. 12-6).[2] The disability onset date was July 13, 2018. Id. at 206. The application was denied

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

[2] The AR is electronically filed at ECF No. 12 (AR 1 to AR 2494).

1

initially and on reconsideration. AR 106-09, 111-15 (ECF No. 12-5). On January 30, 2020, Administrative Law Judge ("ALJ") E. Alis presided over the hearing on plaintiff's challenge to the disapprovals. AR 32-70 (transcript) (ECF No. 12-3 at 33-71). Plaintiff, who appeared with her counsel, Mr. Harvey Sackett, was present at the hearing. AR 34. Mr. Marcos Molinar, a Vocational Expert ("VE"), also testified at the hearing. AR 59.

On March 6, 2020, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 15-27 (decision), 28-31 (exhibit list). On August 24, 2020, after receiving Exhibit 13E, Representative Brief dated May 1, 2020 as an additional exhibit, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-3 (decision), 5 (additional exhibit list). Plaintiff filed this action on October 5, 2020. ECF No. 1. The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 6, 9, 10. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 17 (plaintiff's summary judgment motion), 21 (Commissioner's summary judgment motion), 22 (plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1969, and accordingly was a younger person under the regulations when she filed her application.[3] AR 25 (ECF No. 12-3 at 26). Plaintiff has at least a high school education and can communicate in English. AR 26. Plaintiff worked as a home health aide and hospice aide from 1987 to 2018. AR 37.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

---

[3] See 20 C.F.R. § 404.1563(c) ("younger person").

2

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every

eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not

disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since July 13, 2018, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: a remote history of a head injury with residual right hemiparesis, neurocognitive disorder, cervical disc disease, obesity, and mood disorder (20 C.F.R. § 404.1520(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526).
>
> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except the claimant can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand, and/or walk up to 6 hours in an 8-hur workday.  The claimant can engage in frequent pushing and pulling with the nondominant right upper extremity.  The claimant can engage in frequent climbing of ramps and stairs, balancing, kneeling, and crawling.  The claimant is limited to occasional climbing of ladders, ropes, and scaffolds, stooping, and crouching.  The claimant is limited to occasional reaching overhead, handling, and fingering with the nondominant right upper extremity.  The claimant must avoid concentrated exposure to unprotected heights and dangerous moving mechanical parts.  The claimant is limited to simple, routine tasks.  The claimant is limited to occasional superficial public interactions (e.g. greeting customers or directing customers to location of nearest restroom).  The claimant must work in a stable work environment, which is defined as a work environment that involves few, if any, changes in the daily work setting or in the tools and/or work processes used to complete tasks.
>
> 6. [Step 4] The claimant is unable to perform her past relevant work (20 C.F.R. § 404.1565).
>
> 7. [Step 5] The claimant was born [in 1969] and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age. (20 C.F.R. § 404.1563).

5

8. [Step 5, continued] The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. § 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 13, 2018, through the date of this decision (20 C.F.R. § 404.1520(g)).

AR 17-27 (ECF No. 12-3 at 18-27).

As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act. AR 27.

## VI. ANALYSIS

Plaintiff argues the ALJ's step-five finding was not supported by substantial evidence, the ALJ improperly rejected plaintiff's testimony, and the ALJ improperly rejected lay witness testimony. ECF No. 17 at 8-17. Plaintiff argues these errors were harmful such that the case should be remanded to the Commissioner for further proceedings. Id. at 19-20.

A.   The Commissioner's Step Five Finding is Supported by Substantial Evidence

The ALJ's factual findings are "'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1152 (2019) (quoting 42 U.S.C. § 405(g)). The substantial evidence threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." Id. at 1154, 1157; Ford v. Saul, 950 F.3d 1141, 1159 (9th Cir. 2020) (quoting Biestek); see also Valentine v. Astrue, 574 F.3d 685, 690 (9th Cir. 2009) (substantial evidence "is a highly deferential standard of review"). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal citations omitted).

At step five, an ALJ must demonstrate the existence of a significant number of jobs that a

claimant can perform given her RFC. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). Plaintiff argues the ALJ's step-five finding was not supported by substantial evidence because each possible occupation identified by the ALJ was improper for the claimant. ECF No. 17-1 at 12-18. At step five, the ALJ must show that the claimant can engage in other substantial gainful work that exists in the national economy by either (1) relying on the testimony of a Vocational Expert (VE) or (2) referencing the Medical-Vocational Guidelines. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2002) (citations omitted). "Where the testimony of a VE is used at Step Five, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." Id. at 1162-63. The ALJ relied on the VE's testimony when making his step-five findings that plaintiff would be able to perform the occupational requirements of a parking lot signaler, router, and deli cutter and slicer. AR 26-27 (ECF No. 12-3).

Here, in relevant part, plaintiff's RFC limitation to light work was further narrowed by "occasional reaching overhead, handling, and fingering with the nondominant right upper extremity," "frequent pushing and pulling with the nondominant right upper extremity," and "occasional superficial public interactions (e.g. greeting customers or directing customers to location of nearest restroom)" "in a stable work environment, which is defined as a work environment that involves few, if any, changes in the daily work setting or in the tools and/or work processes used to complete tasks." AR 19-20 (ECF No. 12-3). The Vocational Expert ("VE") considered the full set of limitations the ALJ assessed in the RFC and concluded a person with such limitations could work as "a parking lot signaler, DOT number 915.667-014, SVP level 2, light exertion, nationally there are approximately 29,913 full-time jobs," a "router, DOT number 222.587-038, SVP level 2, light exertion, nationally there are approximately 34,958 full-time jobs," and a deli cutter slicer, DOT number 316.684-014, SVP level 2, light exertion, nationally there are approximately 15,869 full-time jobs." AR 60-61. The ALJ asked the VE whether a person limited to occasional pushing and pulling with the right upper extremity could perform the job of deli cutter, and the VE concluded that increased limitation would eliminate that job but not the other identified jobs. AR 62.

Plaintiff argues the ALJ improperly found plaintiff could perform the duties of the VE's identified occupations because the actual job requirements for each identified occupation renders it unsuitable for a person with her identified RFC. ECF No. 17-1 at 12. If a VE's testimony differs from the job descriptions contained in the Dictionary of Occupational Titles (DOT), an ALJ must resolve the difference. See Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 at *4. Here, there is no conflict; the VE properly considered the requirements for each job and applied them to the RFC. First, as to the parking lot signaler job, the VE considered an individual limited to occasional superficial public interaction (e.g., greeting customers or directing customers to the location of the nearest restroom) (AR 61). The DOT's description of this job consistently states that the parking lot signaler "directs vehicle drivers to [a] specific parking spot, using hand signals," "[l]ifts, positions, and removes barricades to open or close parking areas at direction of [supervisor]," "signals vehicle drivers with hands or flashlight to parking area or to spot within parking areas at activities. . ." DOT #915.667-014, 1991 WL 687870. The DOT describes the kind of superficial public interaction that the vocational expert considered, e.g., greeting and directing people.

Plaintiff argues that penultimate number in the DOT code for this position ("6") signifies that the job involves "significant" public interaction, and notes that a synonym for "significant" is "meaningful." ECF No. 22 at 2-3. That argument falls flat; it is possible to have "significant" interaction that is superficial and not meaningful. Regardless, the actual description of the public contact (signaling drivers) aligns with the descriptive language used in the RFC (greeting and directing people). Thus, the VE properly considered plaintiff's limitation of occasional superficial public interaction such that the ALJ properly relied on his testimony when finding plaintiff could perform the duties of a parking lot signaler. See Matthews v. Shalala, 10 F.3d 678, 689 (9th Cir. 1995) (finding the VE's testimony must accurately reflect the claimant's limitations).

Second, plaintiff has not identified an unresolved conflict concerning reaching, handling, and fingering. ECF No. 17 at 9-10. The VE testified that someone limited to frequent forward reaching and occasional reaching overhead, handling, and fingering with the non-dominant right

arm could perform the three identified jobs. AR 60-62. The VE testified that if the right arm was limited to occasional forward reaching, the deli-cutter job would be excluded because the deli machine is made for right-handed people, but the other two jobs, signaler and router, would still be performable with the left arm. AR 62-63.

Plaintiff's arguments regarding reaching and handling limitations are significantly undercut by the fact that the VE's testimony was based on a hypothetical with no limitation in the dominant left arm. AR 60-61. VE noted that while the DOT does not distinguish between reaching with a dominant versus non-dominant hand, his testimony was based on work experience observing individuals perform various jobs through job sharing for the past 13 years. AR 21, 63. "The ALJ was entitled to rely on the [vocational] expert's 'experience in job placement' to account for 'a particular job's requirements.'" Gutierrez v. Colvin, 844 F.3d 804, 809 (9th Cir. 2016) (quoting SSR 00-4p). Thus, even if there were contradictions between the RFC and the requirements of the identified occupations as to the non-dominant right arm, the occupations would still be suitable (with the possible exception of deli slicer as noted above) as the dominant right arm was not limits at all. Regardless, the ALJ ultimately found plaintiff could frequently forward reach with the left arm, so under the actual RFC prescribed plaintiff would be able to perform all three jobs. AR 20.

Third, plaintiff does not identify an unresolved conflict between the DOT's classification of the identified jobs with a reasoning level of 2 and the VE's testimony concerning a stable work environment, defined as few, if any changes in the daily work setting or in the tools/work processes required to complete tasks. AR 61. The DOT defines reasoning level 2 as "apply[ing] commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "deal[ing] with problems involving a few concrete variables in or from standardized situations. DOT, Appx. C. The limitation to a stable work environment says nothing about plaintiff's ability to understand and carry out instructions and deal with problems. AR 61. To the extent that the DOT's term "variables" could be argued to equate to the VE's testimony concerning the term "changes," both were described as "few," and thus, are consistent with each other.

Finally, plaintiff's motion asserts that even if there is not inconsistency with the DOT, the

```
```

VE's testimony conflicts with data from "O*NET," an online database sponsored by the U.S. Department of Labor containing standardized and occupation-specific descriptors (ECF No. 17-1 at 9), which plaintiff argues is a permissible supplemental source for information. ECF No. 22 at 3. Plaintiff argues that "[w]hile SSA takes administrative notice of the DOT and its accompanying text Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles (SCO), this does not preclude a claimant from presenting alternate evidence that creates a conflict with the DOT/SCO requiring ALJ resolution." Id. This argument overlooks the standard of review the District Court is bound to apply: if the ALJ's determination at Step Five is supported by "substantial evidence," the undersigned cannot overturn the decision. Here the ALJ's decision at Step Five is supported by substantial evidence, and it is irrelevant if external evidence could cause a factfinder to reach a different conclusion. There is no error at step five.

### B. The ALJ Mischaracterized Plaintiff's Testimony

Plaintiff argues the ALJ improperly rejected plaintiff's testimony because he did not specify the non-credible testimony and did not provide specific, clear and convincing reasons for rejecting the testimony. ECF No. 17 at 18, 20. The court agrees. An ALJ performs a two-step analysis to evaluate a claimant's testimony. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (citations omitted). First, the ALJ must evaluate the objective medical evidence of the underlying impairment which could be reasonably expected to cause the alleged symptoms or pain, and second, if there is no evidence of malingering, the ALJ can reject the claimant's testimony as to the symptoms' severity by offering specific, clear and convincing reasons. Id. at 1015 (citations omitted). Inconsistent testimony and complaints inconsistent with plaintiff's daily activities are specific, clear and convincing reasons to discount a claimant's testimony. Frost v. Berryhill, 727 Fed. Appx. 291, 295 (9th Cir. 2018) (citations omitted).

In this case, the ALJ considered plaintiff's testimony and found it to be "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (AR 25) and inconsistent with plaintiff's activities of daily living. AR 21 (ECF No. 12-3 at 22). With respect to plaintiff's activities of daily living, the ALJ found that:

> [t]he claimant's testimony was contradictory. She alleged severe, disabling pain that rendered her dysfunctional, but she inconsistently acknowledged that she spent 8 hours daily taking care of her disabled husband and brother and performing a normal range of household chores. She also acknowledged improvement in symptoms with medication management and she admitted she pursued only intermittent conservative measures for pain relief. Further, no medical source assessed disabling functional limitations in the record.

AR 21. The undersigned finds this to be a mischaracterization of plaintiff's testimony. At the hearing, plaintiff initially stated that she performs these daily activities for eight hours a day but then corrected her testimony to three or four hours a day. AR 52-53. Specifically, plaintiff testified:

> Q: I'm going to ask you this question, you probably haven't thought about it but I'm going to ask anyway. In a so-called typical day if such a thing exists for you between the hours of 9:00 and 5:00 if you add it up, compress all the time that you're helping one family member or another how many hours would you think that would total?
>
> A: That would probably be close to an eight-hour day.
>
> Q: Well the question is that if you're helping them eight hours a day why can't you work a conventional job?
>
> A: Well physically, I mean it's not like I'm pulling my relatives out of bed or anything, they're both mobile to a certain degree and, but every day, the everyday skills that we have to do to keep things going in our house, paying bills, you know, laundry never ends and --
>
> Q: But my specific question was if, you said you were helping them you believe all day long.
>
> A: Well okay, not --
>
> Q: You said eight hours a day.
>
> A: Okay, not --
>
> Q: Okay, let's start again.
>
> A: Sorry.
>
> Q: Okay, 9:00 to 5:00 if you add up all the time you spent helping them is it literally eight hours non-stop?
>
> A: It is not.
>
> Q: Okay, so thinking along the lines of you said you take a siesta and such, how many hours, if you know, if you have an idea, if you don't

11

> know that's fine, would you say you're actually doing something to physically help one member or the other?
>
> A: I am helping them every day prep, when I'm prepping dinner and things like that but I would say at least, you know, three, four hours a day.
>
> Q: If you compressed it all?
>
> A: If I compressed it all.

AR 52-53.

During the hours she does not perform these daily activities, plaintiff uses a heating pad, ice, and stretches. AR 54. The ALJ's summary of plaintiff's testimony is inconsistent with the record; it was incorrect to discredit her testimony as inconsistent based on that summary. Other activities of daily living described by the ALJ, including caring for plaintiff's own personal hygiene, caring for her dogs, driving, taking walks, shopping in stores, managing her finances, and reading books are not necessarily consistent with the ability to work full-time and the ALJ does not explain his logic. Orn, 495 F.3d at 639 (activities of daily living must "bear a meaningful relationship to the activities of the workplace.")

As a supplemental reason for discrediting plaintiff, the ALJ concluded the medical evidence was inconsistent with plaintiff's claims of severe, disabling pain. AR 21. Specifically, the ALJ stated that plaintiff's "allegation of disability is undermined by the lack of significant physical or mental health findings, the intermittent conservative measures to treat pain, the lack of significant mental health treatment, and the lack of assessed functional limitations by many medical sources." AR 25. Above that statement, the ALJ summarized medical records from Kaiser Permanente, the Family Chiropractic and Acupuncture Center, and State Agency consultative psychological and neurological exams. AR 22-23. The ALJ's rationale here is not sufficient. In Brown-Hunter v. Colvin, 806 F.3d 487 (9th Cir. 2015) the Ninth Circuit held that to discredit a plaintiff's testimony based on the medical record "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id. at 493 (quoting Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)). Plaintiff is correct that the ALJ did not make a specific finding linking the objective medical evidence to plaintiff's testimony

about her pain. ECF No. 17 at 20; see Brown-Hunter, 906 F.3d at 494. Failing to specifically identify any such inconsistencies, but simply stating a non-credibility conclusion and then summarizing the medical record, "is not the sort of explanation or the kind of 'specific reasons' [the court] must have in order to review the ALJ's decision meaningfully, so that [the court] may ensure that the claimant's testimony was not arbitrarily discredited." Brown-Hunter, 806 F.3d at 494. This error is not harmless; the proper weighing of plaintiff's testimony may alter the outcome of the RFC. This error requires remand for reconsideration.

### C. Lay Witness Testimony

Finally, plaintiff argues the ALJ improperly rejected plaintiff's mother's testimony. ECF No. 17 at 20-22. "Friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (citing Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). To discount lay witness testimony, an ALJ must give "reasons that are germane to each witness." Id. at 919. Here, The ALJ acknowledged that plaintiff's mother had completed a third party function report, but did not expressly weigh the opinion. AR 25 (ECF No. 12-3). The Commissioner tacitly acknowledges this, but argues that where "as here, an ALJ gives valid reasons for rejecting a claimant's testimony and those reasons are equally relevant to the similar testimony of lay witnesses, any error in failing to give reasons for discounting the lay witness testimony (either individually or in the aggregate) is harmless." ECF No. 21 at 14. The court has found that the ALJ did not properly weigh plaintiff's testimony, negating the Commissioner's argument on this point. The ALJ accordingly erred in failing to weigh the lay witness testimony.

### D. Remand for Further Consideration is Appropriate

As discussed above, the ALJ erred discounting plaintiff's subjective testimony and lay witness testimony. These errors were not harmless, because properly addressing plaintiff's subjective testimony and lay witness testimony could result in a finding of non-disability. Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Treichler v. Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). "[W]here the record has been developed fully and further

administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

Here, further factual development is needed to determine if and to what extent plaintiff's subjective testimony and lay witness testimony should be credited what the impact of any changes would be on the determination of disability. For these reasons, the matter is reversed and remanded to the Commissioner for further factual development.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 21), is DENIED; and

3. The matter is REMANDED to the Commissioner for further proceedings; and

4. The Clerk of the Court shall enter judgment for the plaintiff and close this case.

DATED: January 31, 2022

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE